Michael R. KASPER, an Individual, Plaintiff,

v.

COOPER CANADA LIMITED, a Canadian Corporation, Defendant.

No. 87 C 5633.

United States District Court, N.D. Illinois, E.D.

April 21, 1988.

---

38. See n. 5.

348

Robert E. Wagner, Alan L. Barry, Wallenstein Wagner Hattis Strampel & Aubel, Chicago, Ill., for plaintiff.

Clyde F. Willian, Allan J. Sternstein, William, Brinks, Olds, Hofer, Gilson & Lione, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Michael Kasper ("Kasper") brings this patent infringement and breach of contract action against defendant Cooper Canada Limited, Inc. ("Cooper"). Kasper is the assignee of a patent issued to his father, Dale Kasper, on a helmet and face protector apparatus commonly used in the sports of hockey and broomball ("Kasper patent"). In 1976, Margaret Kasper, then-assignee of the Kasper patent, filed suit against Cooper in federal court, charging among other things that Cooper's Model CFG face protector apparatus infringed the Kasper patent. *Margaret Elizabeth Kasper v. Cooper Canada Limited,* No. 76 C 1917 (N.D.Ill.1976). The parties settled and entered into an agreement ("Settlement Agreement") whereby Cooper paid Margaret Kasper a specified sum and dismissed the action. The Settlement Agreement contained other provisions, the interpretation of which are at issue in this action. As early as 1986, Cooper marketed a newer Model CFG7 face protector which Cooper represented in its catalog as the "same construction as CFG except made to fit" a different size helmet. Complaint, Exhibit D. Kasper alleges that Cooper resumed the production and sale of the Model CFG. Kasper then filed this action, charging patent infringement and breach of the

Settlement Agreement. Cooper moves for summary judgment as to both counts. For the reasons set forth herein, the motion is denied.

Subsequent to filing this action, Kasper learned that Cooper began to advertise and promote a new face protector, the Cooper "20–20," and that Cooper represented to customers that it intended to ship these new protectors as early as May 1988. Kasper moves for leave to amend the complaint to add a count seeking a declaratory judgment that the "20–20" infringes the Kasper patent. This motion is allowed.

## I

### Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that no genuine issue of material fact exists and that it is accordingly entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of a triable fact issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In evaluating a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 460 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). Thus, all factual inferences are made in favor of the non-moving party. *Vachet v. Central Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir.1987). We find that genuine issues of material fact exist as to both counts.

### A. Patent Infringement

■ As to Kasper's patent infringement claim, Cooper contends that, under either a theory of direct infringement or equivalency infringement, the undisputed facts demonstrate that Cooper is entitled to judgment as a matter of law. Since we find the existence of unresolved issues of material fact as to whether Cooper's Models CFG and CFG7 infringe the Kasper patent under the doctrine of equivalency, we deny the motion for summary judgment as to the patent infringement count without addressing direct infringement.

■ The doctrine of equivalency allows a patentee to recover for patent infringement even if the accused device does not literally infringe the language of the patent specification and claims. Specifically, a patentee may recover if the accused device "performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, *reh'g denied*, 340 U.S. 845, 71 S.Ct. 12, 95 L.Ed. 620 (1950) (quoting *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929)); *Wolens v. F.W. Woolworth Co.*, 703 F.2d 983 (7th Cir.1983).

■ In anticipation of Kasper claiming equivalency infringement, Cooper contends that the doctrine of prosecution history estoppel (or "file wrapper estoppel") precludes such a claim. Under this doctrine, a patentee cannot maintain an equivalency claim when a design or operational characteristic of the accused device differs from an essential characteristic of the patented device, and the patentee argued the novelty and nonobviousness of that very characteristic during prosecution of the patent. *Hughes Aircraft Co. v. United States*, 717 F.2d 1351 (Fed.Cir.1983). A patentee is precluded from narrowing its patent application to distinguish it from the prior art and thereby obtain the patent, and then broaden the patent specification to include the accused device in a later infringement action. When, however, the narrowing claims and arguments made during prosecution of the patent are ambiguous or not explicit, the doctrine of prosecution history estoppel should be applied sparingly. *Caddock v. Hy–Meg Corp.*, 668 F.Supp. 1179, 1181 (N.D.Ill.1987). We believe that such ambiguity is present here.

In applying the doctrine of prosecution history estoppel to Kasper's patent infringement count, Cooper contends that in order to obtain the Kasper patent, Kasper narrowed its patent claim to exclude face

protectors that are ventilated by means of a gap between the face protector and the helmet ("gap-ventilated face protectors"). Since Cooper's Models CFG and CFG7 are gap-ventilated face protectors, Cooper concludes, Kasper cannot now claim they infringe on the Kasper patent.

Reading those portions of the prosecution history to which Cooper directs our attention most favorably to Kasper, we conclude that the trier of fact could find that Kasper did not narrow its claim to exclude gap-ventilated face protectors such as Cooper's. In a letter sent by Dale Kasper's attorney to the Patent Examiner in the early stages of the patent prosecution, Kasper stated that while the protector's

> ventilating means could include a selective separation of the upper portion of the face protector from the forward edge of the helmet, it preferably includes positive means, such as a plurality of openings along the upper portion of the mask or spacing means ...

Cooper Motion for Summary Judgment, Exh. 4. In his July 5, 1974 amendment to Claim # 1 of the patent application, Dale Kasper stated that "said protective apparatus [has the] means to allow air to circulate between said face protective portion and the face of the wearer and prevent fogging and heat built-up." At that point in the prosecution history, Kasper expressly reserved gap-ventilating means as a characteristic of the Kasper patent.

The Patent Examiner rejected the July 5, 1974 amendment, stating that

> [s]pacing elements [in the Kasper Face Protector] provide an area between the helmet and face guard that allows air to circulate between the the face protector and the face of the wearer. To construct the Heacox protector with strap means that attach to the protector and fit under the chin as suggested by Adams would be obvious to one having ordinary skill in the art ... (Applicant should note the newly cited references to Romann, Harrison and McCabe which show face guards which are spaced from supporting frame members to allow for ventilation.)

*Id.*, Exhs. 5a, b. A trier of fact could reasonably infer from this language that the Patent Examiner rejected the amendment solely on the basis of the "strap means," not the gap-ventilating means. The mere mention of the "spacing elements" and the Romann, Harrison and McCabe references do not indicate an explicit rejection on the basis of gap-ventilation and may have been an attempt to point out a potential problem in connection with the strap means.

Prior to filing his next amendment, Dale Kasper noted in a letter to the Patent Examiner that "[a]pplicant is not attempting to claim ventilating means per se ... What is claimed is a unique face protector configuration having a ventilating means along its upper edge." *Id.*, Exh. 7. A trier of fact could, in combination with the previous letter and amendment, reasonably conclude that Kasper did not exclude gap-ventilation as the ventilating means, but merely limited its location to the upper edge of the face protector. Finally, Kasper's January 13, 1975 amendment to Claim # 1 states the language ultimately accepted by the Patent Examiner:

> said face protector portion having ventilating means, to allow air to circulate between said face protective portion and the face of the wearer.

*Id.*, Exh. 6. Again, a trier of fact could reasonably infer that this language does not exclude any type of gap-ventilation, and certainly does not limit the ventilating means to holes and ribs as contended by Cooper.

In sum, Cooper has failed to identify any language used by Kasper or the Patent Examiner that unequivocally narrows Kasper's claim to exclude gap-ventilated face protectors. A trier of fact could interpret those portions of the prosecution history cited by Cooper as implicitly reserving gap-ventilating means in the Kasper patent. "At the very least, if ambiguity is thought to surround the prosecution history in this case, that could give rise to a question of fact underlying the legal question of claim construction." *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 976 (Fed.Cir.1985). Cooper has failed to point out language in the

prosecution history that unambiguously demonstrates the applicability of prosecution history estoppel to Kasper's patent infringement claim. Accordingly, the motion for summary judgment as to this count is denied.

B. Breach of Settlement Agreement

■ In his breach of contract claim, Kasper alleges that by resuming the sale of the Model CFG and commencing the production and sale of the Model CFG7, Cooper breached the Settlement Agreement. Cooper admits that the Settlement Agreement is binding and enforceable. In its motion for summary judgment, Cooper contends that it did not agree to forever refrain from selling the Model CFG or any face protector similar to the CFG. Relying on the provision of the Settlement Agreement that states Cooper merely "intends to and is in the process of phasing out production and sale of said Model CFG," Settlement at 3, Cooper argues that its contractual duties did not extend so far as to include carrying out the terms or spirit of that expression of intent.

The cited portion of the Agreement is ambiguous in the duties to which it bound Cooper. While Cooper interprets the provision as merely an expression of intent and not a promise to act on that intent, Kasper interprets it as an implicit promise to discontinue the sale of the Model CFG or any similar model. Kasper presents some evidence to support its contention that the parties intended to bind Cooper to that promise. The fact that the Settlement Agreement disposed of Margaret Kasper's patent infringement action could, in combination with the cited provision, create an inference that Cooper promised to refrain from the alleged patent infringement by not selling the Model CFG face protector. Cooper's failure to object to a letter sent to Cooper's counsel three months prior to the signing of the Agreement that stated Cooper will not make "its present mask [CFG]

or a mask of the type accused to infringe" could create the inference that this promise went beyond the Model CFG to include face protectors such as the Model CFG7. Finally, the affidavits of Margaret and Michael Kasper set forth their understanding of the Agreement at the time the Settlement Agreement became a binding contract.[1]

By this evidence and all reasonable inferences therefrom, Kasper has identified a genuine issue of material fact and thereby satisfied his burden in opposing summary judgment. Kasper has demonstrated that the provision in the contract upon which Cooper relies in its motion *"may* reasonably admit of different meanings [and therefore] a question exists which may be resolved only by the factfinder." *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 363 (3d Cir.1987). Accordingly, Cooper's motion for summary judgment as to this claim is denied.

II

Motion to Amend

■ Kasper seeks to add a claim that the new "20–20" face protector will infringe the Kasper patent. Cooper opposes the motion primarily on the grounds that Kasper cannot obtain relief on a product as yet unsold. The case law clearly demonstrates that Kasper has stated a cognizable claim for declaratory relief.

Kasper alleges in the amended complaint and provides supporting evidence in this motion that Cooper has represented to various customers that the "20–20" would be available within several months. Further, Cooper has extensively advertised and promoted the product. As in *Automation Systems, Inc. v. Intel Corp.*, 501 F.Supp. 345 (S.D.Iowa 1980), Kasper has alleged that "the product in question is sufficiently near production and marketing so as to represent an immediate threat to [Kasper's] interest in [his] patent," *Id.* at 348,

---

1. Cooper's contention that the evidence presented by Kasper merely demonstrates Kasper's desire that the Settlement Agreement bind Cooper to a promise to discontinue the Model CFG and all similar models is misplaced. We do not dispute that such an interpretation is reasonable. However, for purposes of this motion for summary judgment, we must recognize that Kasper's interpretation is not unreasonable (especially in combination with the fact that the contract settled ongoing litigation) and accordingly leave it to the trier of fact to resolve.

and has accordingly satisfactorily pled "sufficient immediacy and reality" to state a claim for declaratory relief. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

Defendant's contention that there must have been an actual sale is without any support in law or logic. To adopt such a position would completely defeat the purpose of declaratory relief:

> It will be to no one's advantage to wait for a consideration of the infringing character of a product or process until the actual infringement takes place since this only serves to increase the resulting potential economic harm. Thus, immediate review of the patent infringement issue provides both parties with the determination of their rights and obligations upon which they can rely in assessing future behavior with respect to the product or process in question.

*Automation Systems,* 501 F.Supp. at 347. The cases cited by Cooper denied declaratory judgment claims because the characteristics and construction of the alleged infringing products were as yet undetermined. Here, Cooper's advertisements set forth the features of the "20–20" in great detail.[2]

Allowing the amended complaint would promote judicial economy since this action already involves a claim of infringement of the Kasper patent. Further, the parties have initiated discovery on the "20–20" face protector, and Cooper presents nothing to support its blanket assertion that discovery would become unduly burdensome and complicated.[3] Accordingly, the motion for leave to file the second amended complaint is allowed.

## III

### Bifurcation of Proceedings

The resolution of this dispute may be expedited by consideration of the breach of settlement agreement claim separate from and prior to the patent infringement and declaratory judgment counts. A finding as to whether the production and sale of the Model CFG7 face protector violated Cooper's duties under the settlement agreement may simplify, or even obviate, litigation of the remaining issues.

Accordingly, pursuant to Fed.R.Civ.P. 42(b), the breach of contract claim is to be tried separately from and prior to the patent claims.

## IV

### Conclusion

There are genuine issues of material fact as to the meaning of language in the prosecution history and the intent of the parties in the Settlement Agreement. Accordingly, the motion for summary judgment is denied as to both counts. Kasper's second amended complaint is allowed. The complaint will be bifurcated for trial. The liability issues in Count III will be tried first. It is so ordered.

---

**2.** In opposition to Kasper's motion, Cooper mischaracterizes the procedural posture of some cases and reads others completely out of context. *See* Plaintiff's Reply Memorandum. We do not find at this point, however, that Cooper's pleadings as a whole were so frivolous as to warrant Rule 11 sanctions. *Brown v. Federation of State Medical Boards of U.S.,* 830 F.2d 1429, 1434 n. 2 (7th Cir.1987). We do, nevertheless, admonish Cooper to apply greater care in any further briefs filed before this Court.

**3.** In fairness to the parties, we extend the pretrial order filing date to May 27, 1988. We will hold Kasper to his representation that "no extension of discovery would be necessary should this Court grant the present motion" and accordingly will not consider any motions for extension of time filed by Kasper.